TOSHIBA SAMSUNG STORAGE
TECHNOLOGY KOREA COR-
PORATION, Plaintiff,

v.

LG ELECTRONICS, INC., LG Electron-
ics U.S.A., Inc., and LG International
(America), Inc., Defendants.

Civil Action No. 15-691-LPS

United States District Court,
D. Delaware.

Filed June 17, 2016

Thomas C. Grimm, Morris, Nichols, Arsht & Tunnell LLP, Denise Seastone Kraft, Brian A. Biggs, DLA Piper LLP, Wilmington, DE, for Plaintiff.

Alan Limbach, Pro Hac Vice.

Brent K. Yamashita, Pro Hac Vice.

Harpreet Singh, Pro Hac Vice.

Joseph A. Rhoa, Pro Hac Vice.

Katherine Cheung, Pro Hac Vice.

Krista A. Celentano, Pro Hac Vice.

Saori Kaji, Pro Hac Vice.

Stanley J. Panikowski, Pro Hac Vice.

Updeep (Mickey) S. Gill, Pro Hac Vice.

Jenny L. Colgate, Pro Hac Vice.

Mary Matterer, Morris James LLP, Wilmington, DE, for Defendants.

## MEMORANDUM ORDER

Christopher J. Burke, UNITED STATES MAGISTRATE JUDGE

Before the Court is a renewed motion ("renewed motion" or "Motion") to stay the proceedings in the instant patent infringement case, filed by Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc. and LG International (America), Inc. ("Defendants" or "LG"). (D.I. 62) Defendants now seek to stay the only remaining portion of this case that has not already been stayed—as to claims and defenses relating to Plaintiff Toshiba Samsung Storage Technology Korea Corp.'s ("Plaintiff" or "TSST-K") United States Patent No. RE43,106 (the "'106 patent"). For the reasons stated below, the Court DENIES Defendants' Motion.[1]

## I. BACKGROUND AND STANDARD OF REVIEW

The '106 patent has 62 claims. TSST-K initially intends to assert claims 4-27 and 36-54 in this litigation. (D.I. 59 at 2) Of those, the PTAB has now instituted *inter partes* review as to claims 7-19. (*Id.*) And so claims 4-6, 20-27 and 36-54 of the '106

---

1. The Court assumes familiarity herein with its December 3, 2015 Memorandum Order in this case, in which it denied LG's prior motion to stay the case (the "prior motion"). *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, Civil Action No. 15–691–LPS–CJB, 2015 WL 7824098 (D.Del. Dec. 3, 2015) ("*TSST–K I*"). LG had sought a stay pending resolution of its then-pending petitions seeking *inter partes* review ("IPR") of certain claims of the four patents-in-suit. *Id.* at * 1. Thereafter, the United States Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB") instituted review on every challenged claim on all four patents-in-suit. (D.I. 59 at 1) Subsequent to the PTAB's decisions, TSST-K indicated that it would not oppose a stay as to three of the four patents-in-suit (i.e., every patent-in-suit other than the '106 patent), as all of the claims of those three patents that TSST-K intends to assert in this litigation are the subject of the IPR proceedings. (D.I. 63 at 2) Accordingly, the Court issued an Oral Order on March 14, 2016 staying this case as to claims and defenses relating to those three patents. The Court further advised the parties that, even if it ultimately granted LG's renewed motion to stay as to the '106 patent, it would exclude from that stay the resolution of LG's pending motion to dismiss, (D.I. 25), as both parties had requested, (D.I. 23 at 1 n.3; D.I. 63 at 2).

patent (30 claims in total) constitute the only initially-asserted claims of the four patents-in-suit that are not currently subject to IPR. (*Id.*)

■ This Court has typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g., FMC Corp. v. Summit Agro USA, LLC,* Civil Action No. 14–51–LPS, 2014 WL 3703629, at *2 (D.Del. July 21, 2014) (citing cases). The Court will discuss these factors in turn below.

## II. DISCUSSION

### A. Simplification of Issues

The Court first addresses the "simplification of issues" factor. Here, both sides have something to argue.

In LG's favor, for example, is the fact that with regard to the '106 patent, there is overlap between what is at issue in the PTAB and what will be at issue in this case. For one thing, 13 claims are at issue in both proceedings. Thus, when the PTAB addresses invalidity and claim construction issues relating to those claims, its decisions could drastically alter (or, at a minimum, at least have some effect on) how those claims are litigated in this case. Moreover, as to these 13 claims, LG will be estopped from asserting in the instant litigation "invalidity arguments that were raised or reasonably could have been raised ... during the IPR proceeding." (D.I. 62 at 3 (citing 35 U.S.C. §§ 311, 315(e)(2) & 318(a))) And were any of these claims amended or cancelled in the IPR proceeding, any efforts

spent addressing them in the meantime might be wasted. (*Id.*); *see Advanced Micro Devices, Inc. v. LG Elecs., Inc.,* Case No. 14–cv–01012–SI, 2015 WL 545534, at *3 (N.D.Cal. Feb. 9, 2015).

Additionally, it appears that there will be at least some overlap among issues addressed in the IPR proceeding (i.e., as to the 13 claims at issue there) with issues that will arise in this case as to the other 30 asserted claims of the '106 patent. By way of example, claim 7 (at issue in the IPR) and claim 20 (not at issue in the IPR) are each directed to an "objective lens" for focusing at least two different "light beams" on "optical recording medi[a]" of different thicknesses, wherein the lens has an "inner region" and a "diffractive region[.]" (*Compare, e.g.,* '106 patent, col. 8:18-32, *with id.,* col. 9:12-20)[2] To be sure, a number of the limitations set out in the dependant claims that are a part of the IPR proceeding (i.e., claims 8-19) do not necessarily have a counterpart in the other claims that are asserted in this case. (*Compare, e.g., id.,* cols. 8:32-9:11, *with id.,* col. 9:21-62) But in light of the above-referenced commonalities, the Court agrees with LG that there will be various ways in which this case might benefit from the PTAB's analysis of claims 7-19 of the patent. (D.I. 62 at 2-3); *cf. Neste Oil OYJ v. Dynamic Fuels, LLC,* Civil Action No. 12–1744–GMS, 2013 WL 3353984, at *4 (D.Del. July 2, 2013) (listing "a number of ways staying a case pending PTO review can simplify litigation").

■ And yet in the Court's view, it is TSST-K that has the better of the simplification argument. The Court so concludes for three primary reasons.

First, it is important not to lose sight of the fact that a much greater percentage of

---

**2.** These limitations are the ones the PTAB considered in instituting review of claims 7-19 as to LG's obviousness challenge. (D.I. 59, ex. D at 10-11)

the '106 patent's claims that are now at issue here will *not* be at issue in the IPR proceeding. Because the IPR proceeding will address only 13 of the 43 claims of that patent, at most the PTAB could invalidate roughly 30% of the '106 patent claims at play in this case. Even when one adds in the initially asserted claims of all four patents-in-suit, the PTAB could at most invalidate 50% of those claims (i.e., 30 out of the 60 initially asserted claims). Thus, a PTAB decision that is totally favorable to LG will leave behind a lot to (at least potentially) be litigated here as to the '106 patent. *See Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, Civ. No. 13–2012–SLR/SRF, 2015 WL 5145526, *1– 2 (D.Del. Sept. 1, 2015) (denying a motion to stay where, *inter alia*, out of the three patents-in-suit, the IPR proceedings covered all of the asserted claims of one patent, all but two asserted claims of the second patent and no asserted claims of the third, such that "the parties' dispute [would] not be fully resolved by the IPRs, regardless of the outcome of such").

Second, when it comes to the '106 patent, the IPR stands to address a fairly circumscribed number of legal issues as to claims 7-19. *See Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, Civil Action No. 12–1461–LPS–CJB, 2014 WL 3819458, at *3 (D.Del. Jan. 15, 2014) ("The more that the scope of the issues to be resolved during the litigation exceeds the scope of the issues that can be examined during IPR, the greater this cuts against a finding that an IPR proceeding will lead to great simplification of the issues at play [in the litigation]."). Here, the PTAB's review of the '106 patent is limited to a single legal issue: whether the claims are obvious under 35 U.S.C. § 103(a) in view of certain admitted prior art and United States Patent No. 5,696,750. (D.I. 62 at 2; D.I. 59, ex. D at 5) Unlike in some cases, here the PTAB will not be addressing a large number of pieces of prior art, nor will it be

opining on whether a large number of asserted prior art combinations render the claims invalid. The PTAB will also not be assessing any arguments as to anticipation under 35 U.S.C. § 102. And of course, the PTAB will not take up any arguments relating to infringement, damages or other issues that will arise in this litigation regarding the '106 patent.

Third, TSST-K's suggestion that there "will not be a significant overlap in discovery between the '106 patent and the remaining patents-in-suit" is at least somewhat credible. (D.I. 63 at 3); *cf. Cypress Semiconductor Corp. v. GSI Tech, Inc.*, Case No. 13–cv–02013–JST, 2014 WL 5021100, at *3 (N.D.Cal. Oct. 7, 2014) (noting that where discovery relating to the patents-in-suit was similar, then "[s]o long as the case proceeds in part and is stayed in part, the parties risk duplication as a result of the overlapping patents, witnesses, and issues"). Here, the '106 patent at least appears to be directed to a different aspect of the accused products (i.e., the optical pickup apparatus and its holographic lens), ('106 patent, col. 1:28-34), than those described in the already-stayed patents-in-suit, (United States Patent No. 7,367,037, col. 1:24-33 (directed to a disk player, turntable, clamper and spindle motor); United Sates Patent No. 6,721,110, col. 1:15-23 (directed to the actuator of an optical pickup); United States Patent No. 6,785,065, col. 1:16-24 (also directed to the actuator of an optical pickup)). While the Court assumes that some amount of discovery will be the same across all four patents-in-suit, because the '106 patent does appear to be "fundamentally different" than the other patents in some ways, (D.I. 63 at 3), a non-trivial amount of discovery will likely be unique to that patent.

In the end, a good chunk of claims and issues as to '106 patent are likely to be unaddressed by the IPR proceeding. Thus, real progress could efficiently be made as

to one patent-in-suit while the stay as to the other patents is in effect. Taking TSST-K at its word that the other 30 asserted claims (or some substantial number of them) will continue to be pressed as this litigation goes on, the Court concludes that the "simplification of issues" factor disfavors a stay.

### B. Status of the Litigation

Our Court has noted that staying a case in its early stages in favor of an IPR proceeding can advance judicial efficiency, in that this prevents the court and parties from expending resources on claims that may later be rendered invalid. *See Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No. 12–cv–1107, 2014 WL 1369721, at *6 (D.Del. Apr. 7, 2014). Here, the Court agrees with LG that at the time of the Motion, this case was still in its early stages. (D.I. 62 at 3) While some initial progress had been made,[3] a *Markman* hearing is not set to occur until November 2016, fact discovery does not close until April 2017 and a trial will not occur until December 2017. (D.I. 33); *see SenoRx, Inc. v. Hologic, Inc.*, Civ. Action No. 12–173–LPS–CJB, 2013 WL 144255, at *5–6 (D.Del. Jan. 11, 2013) (finding that this factor "squarely favor[ed] a stay" where the parties had "expended more than a *de minimis* amount of effort on the litigation" but dates for significant

case events (e.g., a *Markman* hearing and the completion of expert discovery) were "months away" and the start of trial at least a year out).[4] This factor favors a stay.

### C. Undue Prejudice

This Court has often analyzed whether a non-movant (here TSST-K) would suffer undue prejudice (and whether a movant would gain an unfair tactical advantage) if a stay is granted, by examining a number of subfactors. *SenoRx*, 2013 WL 144255, at *6. LG addressed each of these subfactors in its briefing, (D.I. 13 at 11-13; D.I. 62 at 3), and the Court will do so here.

#### 1. Timing of the request for review and the requests for stay

As to the timing of a request for IPR and of a stay request, this Court has explained that in some sense, such requests can always be said to seek a tactical advantage. That is, they "would not have been filed but for [a movant's] belief that the granting of a stay would [be to its] benefit[.]" *Round Rock Research LLC v. Dole Food Co. Inc.*, Civil Action No. 11–1239–RGA, 2012 WL 1185022, at *2 (D.Del. Apr. 6, 2012). However, if the timing of these filings appears less focused on facilitating an orderly review of patent claim validity, and more focused on simply disrupting the progression of the non-movant's district court case for disruption's sake, that can weigh against a stay.[5]

---

3. Prior to the filing of the Motion, a Scheduling Order was entered, the parties exchanged certain initial disclosures, they served and responded to some initial discovery requests, and they skirmished over protective order disputes. (D.I. 33; D.I. 40; D.I. 49-51; D.I. 56; D.I. 63 at 3)

4. In responding to the prior motion to stay, TSST-K had: (1) noted that, at the time, the case was "technically at its infancy"; and (2) argued (in assessing the "undue prejudice" factor) that were LG to renew its motion to stay after a PTAB institution decision, "the combined amount of case-related activity that will have occurred in the interval will not be

so significant as to constitute a waste of resources." (D.I. 18 at 9, 11) Moreover, in resolving the prior motion to stay, the Court noted that if the PTAB ultimately instituted IPR proceedings and LG renewed its stay motion, "[s]ome case-related activity will occur in that time, to be sure. But the scope of that activity is relatively small." *TSST–K I*, 2015 WL 7824098, at *1. The Court has no reason to believe that these predictions have not born true, and this highlights why this factor should favor a stay.

5. *See, e.g., Belden Techs. Inc. v. Superior Essex Commc'ns LP*, Civ. No. 08–63–SLR, 2010 WL 3522327, at *2 (D.Del. Sept. 2, 2010) (finding

LG filed their IPR petitions on July 30 and 31, 2015, (D.I. 13 at 12), before TSST-K filed the Complaint in the instant matter, (D.I. 1). And LG's prior motion to stay (which was later followed by the instant Motion) was filed on September 25, 2015, less than two months after the filing of that Complaint. (D.I. 12) LG's IPR petitions and its attempts to stay this case thus were brought at understandable junctures—at a time when it was clear that litigation and discovery on TSST-K's infringement claims would soon proceed in earnest in this Court unless LG took action, and when the efficiency gains resulting from a stay would be at their highest point. Again, that is not to say that litigation "tactics" were not driving LG's filings. Of course they were, just as they have been the motivator for many other decisions both parties have made in this case and in another litigation matter between the parties in this Court: *LG Electronics, Inc. v. Toshiba Samsung Storage Technology Korea Corp.*, Civil Action No. 12–

1063–LPS (D.Del.) ("the *LG Action*")[6] But nothing in the timeline of LG's filings suggests *unduly prejudicial* or *unfair* tactics are afoot. *See LG Elecs., Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, Civil Action No. 12–1063–LPS–CJB, 2015 WL 8674901, at *6 (D.Del. Dec. 11, 2015).

For these reasons, this subfactor weighs in favor of a stay.

### 2. Status of review proceedings

█ The instant Motion was filed in February 2016, soon after the PTAB's decisions to institute review of the challenged claims on all four patents-in-suit. (D.I. 59; D.I. 62) The IPR proceedings are not expected to be fully resolved by the PTAB until February 2017,[7] (D.I. 18 at 3, 8; D.I. 23 at 4), and were a stay thereafter continued in favor of appellate proceedings, it might extend to "two years or more[,]" (D.I. 18 at 9; *see also* D.I. 63 at 3). That would amount to a lengthy delay in TSST-K's ability to have its claims as to the '106 patent adjudicated in this Court.[8] *See*

---

that requests for reexamination made 17 to 20 months after the lawsuit was initiated, followed by a motion to stay filed 11 days before trial, gave rise to such an inference); *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ.A. 01–557JJF, 2003 WL 25283239, at *1 (D.Del. Jan. 30, 2003) (denying a motion to stay and noting that "the fact that the instant motion was filed after the close of discovery and weeks before the commencement of the scheduled trial date" supported the conclusion that delay would occasion undue prejudice).

6. The Court also assumes familiarity herein with the procedural posture of the *LG Action*. TSST-K's claims of infringement as to the four patents-in-suit here were originally filed as counterclaims in the *LG Action* in April 2015. (D.I. 58, *LG Action*) However, the District Court later severed and dismissed those counterclaims without prejudice. (D.I. 81, *LG Action*) TSST-K then filed the Complaint in the instant case, pressing those same claims of infringement once again.

7. With a possible six-month extension by the USPTO's Director for "good cause." 35 U.S.C. § 316(a)(11).

8. LG contends that any such delay should not be a significant factor because TS ST-K decided not to file infringement claims as to the patents-in-suit until April 2015—despite the fact that TSST-K informed LG in 2012 that it believed LG may be infringing those patents. (D.I. 13 at 9; D.I. 23 at 4-5) TSST-K has responded that the procedural posture of the *LG Action* in 2012 (in which TSST-K and a related defendant entity were then arguing that there was no personal jurisdiction over them in this Court) was such that it did not make sense at the time for it to bring these infringement claims as counterclaims in the *LG Action* (or otherwise). (D.I. 67 at 45-49)

The Court takes LG's point that these circumstances suggest that TSST-K did not act with the utmost urgency in bringing these claims to court in the first instance. That said, having now filed the claims, the delay TSST-K faces were the Motion to be granted is real and should not be ignored.

*Neste Oil*, 2013 WL 3353984, at *2 (noting, in mid-2013, the "lengthy" delay that could result from a stay in favor of IPR proceedings that, if instituted, were not expected to conclude until sometime in 2015, and the harm this could cause to the non-movant). TSST-K is already facing a long delay in having its claims as to the other three patents-in-suit resolved (assuming they emerge from the IPR proceedings). Having the ability in the meantime to seek redress for alleged infringement of the '106 patent could mitigate the harm from that delay. This subfactor weighs against a stay.

### 3. Relationship of the Parties

■ The final factor to consider in assessing the potential prejudice to the non-movant is the relationship of the parties, which typically involves considering whether the parties are direct competitors. *See, e.g., Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09–865–LPS, 2010 WL 5149351, at *5 (D.Del. Dec. 3, 2010) (citing cases). Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudi-

cating the alleged infringement will have outsized consequences to the party asserting that infringement has occurred, including the potential for loss of market share and an erosion of goodwill. *See, e.g., SenoRx*, 2013 WL 144255, at *7 (citing *Nat'l Prods., Inc. v. Gamber–Johnson LLC*, No. 2:12–cv–00840, 2012 WL 3527938, at *2–3 (W.D.Wash. Aug. 14, 2012)).

■ Here, it is undisputed that while the parties compete for business against each other in the optical disc drive market, they are but two of many competitors in a very crowded field. (D.I. 13 at 13; D.I. 18 at 9; D.I. 67 at 9-11) In light of this, when the Court assessed a prior stay motion in the *LG Action*, it concluded that this subfactor weighed in favor of the requested stay, in that money damages could adequately compensate the patentee for harm due to infringement. *See LG Elecs., Inc.*, 2015 WL 8674901, at *6–7. The conclusion should be no different here, where the case caption is reversed but the principals are basically the same.[9]

Accordingly, the Court concludes that this subfactor weighs in favor of a stay.

9. Both sides argued that another aspect of their "relationship" is relevant to the prejudice inquiry: the litigation posture of this action as compared to the *LG Action*. In TSST-K's view, were a stay as to all patents-in-suit granted here, while the *LG Action* proceeds forward as to certain patents, this would reduce TSST-K's "counter-leverage." (D.I. 67 at 47, 51-52) That is, TSST-K asserts that the purpose of LG's instant Motion is "to create as much [of] a temporal gap as possible between [LG's] offensive claims and TSST-K's claims so that [LG] can gain a tactical advantage in litigation, in settlement leverage, in whatever the case may be by having their claims adjudicated a lot earlier than" TSST-K's own claims. (*Id.* at 47) LG, for its part, argues that were a stay *not* granted in full here, it would be unfairly disadvantaged. (D.I. 13 at 10) It notes that the *LG Action* suffered from lengthy delays while an IPR proceeding as to certain of the patents-in-suit there

moved forward. (*Id.* at 10-11) And so it argues that in this case, TSST-K similarly should not "be able to proceed in the district court before its patents are addressed in IPRs[.]" (*Id.* at 11) The Court is certainly aware that the timing of the respective litigations have been a factor in the filing of various stay motions in the two cases. But the Court does not believe that these "leverage" considerations should benefit either side here. For one thing, it is uncertain as to how the *LG Action* will proceed going forward. The Court recently denied an "interim stay" request from TSST-K in that case, (D.I. 152, *LG Action*), but TSST-K claims that its recent Korean bankruptcy filing will soon lead to an automatic stay of the matter, (*Id.* at ¶ 1). Secondly, in the main, it is the Court's view that each case should proceed forward at a pace that is appropriate based on the particular facts relevant to *that case*.

### 4. Conclusion

 The "undue prejudice" considerations are mixed. Here, as it was in the Court's decision on a stay motion filed by TSST-K in the LG Action, *see id.* at *7, the subfactor of greatest concern is the harm the non-movant (TSST-K) faces from delay. While the amount of delay that a stay would occasion here might not be quite as severe as the cumulative delay that LG stood to face were a stay granted in the *LG Action*, it is still significant. Taking this into account, but noting that the other subfactors weigh in favor of a stay, overall the "undue prejudice" factor is neutral.

### III. CONCLUSION

 A balancing of the stay factors does not favor either side (with one in TSST-K's favor, one in LG's favor and one neutral). And so, this Motion could go either way. With the movant not having shown that the equities tilt in its favor, however, the Court will DENY the Motion. The case should be able to proceed as to the '106 patent in a relatively efficient manner, even though the PTAB will be addressing certain of the asserted claims of that patent in an IPR proceeding.[10] Moving forward in this way will most equitably allow TSST-K to seek review of some of its infringement claims,[11] while waiting for the PTAB's decision and guidance as to the remainder of the patents/claims that are in the case.

---

10. For substantially the reasons set out in TSST-K's May 27, 2016 letter to the Court, the Court does not believe that TSST-K's pending Korean bankruptcy filing supports a stay here as to the '106 patent. (D.I. 76 at 1-2) If anything, the bankruptcy filing could be said to weigh against a stay, since any significant monetary award in TSST-K's favor would materially benefit TSST-K's bottom line. (*Id.*) And TSST-K does not seem bothered by the litigation costs it would have to expend (even as an entity seeking bankruptcy protection) in order to obtain such an award. If those litigation costs are relatively inconsequential to TSST-K in light of the award it thinks it may receive, then the Court need not concern itself with them.

11. That is, assuming that TSST-K has the right to bring this case in the first place, an issue which is the subject of the pending motion to dismiss. (D.I. 25)